UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RELPHA TECH CORP. (f/k/a REALPHA ASSET
MANGEMENT, INC.),

                      Plaintiff,

        -against-                                  24-cv-8325 (LAK)

GEM YIELD BAHAMAS LIMITED,

                      Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

                      Mark R. Basile
                      Waleed Amer
                      Eric Benzenberg
                      THE BASILE LAW FIRM P.C.

                      *Attorneys for Plaintiff*

                      Francis X. Nolan, IV
                      Bruce Bettigole
                      William T. O'Brien
                      EVERSHEDS SUTHERLAND LLP

                      *Attorneys for Defendant*

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/13/25

LEWIS A. KAPLAN, *District Judge*.

        This is an action for rescission of a warrant to purchase shares. Plaintiff argues that the warrant is void by virtue of Section 29(b) of the Securities Exchange Act of 1934 (the "Exchange Act")[1] because defendant was not registered as a "dealer" with the Securities and Exchange Commission ("SEC"). Plaintiff seeks in the alternative a declaratory judgment regarding adjustment

---

[1] 15 U.S.C. § 78cc(b).

2

of the exercise price of the warrant. Defendant moves to dismiss the Exchange Act claim on the grounds that it is untimely and in any case fails to state a legally sufficient claim. It argues also that the declaratory judgment claim should be dismissed because that claim is not ripe.

### *Factual Background*[2]

On or about December 1, 2022, the parties entered into a share purchase agreement ("SPA"), pursuant to which plaintiff agreed to sell up to $100,000,000 worth of its shares to an affiliate of defendant[3] and to issue at a later time a warrant entitling defendant to purchase up to 1,700,884 of plaintiff's shares at an alleged exercise price of $406.67 per share.[4] The warrant was issued to defendant on October 23, 2023.[5] Defendant has not exercised its purchase right under the warrant.[6] The complaint alleges that the warrant was unlawful when made because defendant then

---

[2] For the purpose of this motion, the Court assumes the truth of plaintiff's allegations and draws all inferences favorable to plaintiff to which the allegations reasonably are susceptible.

[3] Compl. ¶ 27.

[4] *Id.* ¶¶ 33–35; Dkt. 1-1. The warrant and the SPA each contain a provision providing for an adjustment of the exercise price. Compl. ¶¶ 36–37. These provisions conflict, yielding drastically different adjustments to the exercise price. Dkt 22 at 26 ("[T]he calculation under the Warrant provision results in an adjusted exercise price of $368.18, whereas the calculation under the SPA provision results in an adjusted exercise price of $1.33, or less.").

[5] Compl. ¶ 33; Dkt 1-1 at 1.

[6] Compl. ¶ 38.

3

was a "dealer" within the meaning of the Exchange Act, that it therefore was required thereby to have registered with the SEC, and that it had not done so.[7]

### *Discussion*

*1.    Exchange Act Claim*

    *A.    Statute of Limitations*

The statute of limitations for a rescission claim under Section 29(b) is one year.[8] The limitations period runs "from the time when an individual 'could have, through the exercise of reasonable diligence, discovered the fraud' at issue."[9]

The warrant here was issued in October 2023. The complaint was filed on November 1, 2024, over one year later. Plaintiff concedes that defendant's unregistered status is a matter of public record.[10] Nevertheless, plaintiff contends that its Exchange Act claim is timely because it did not have had constructive knowledge of defendant's activities that brought it within the statutory definition of a dealer when it issued the warrant.[11]

---

[7] Compl. ¶¶ 1–4, 71–79.

[8] *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1038–39 (2d Cir. 1992); *DarkPulse, Inc. v. FirstFire Glob. Opportunities Fund*, LLC, No. 21 CIV. 11222(ER), 2023 WL 199196, at *9 (S.D.N.Y. Jan. 17, 2023), *vacated in part on other grounds*, No. 23-78, 2024 WL 1326964 (2d Cir. Mar. 28, 2024).

[9] *Alpha Cap. Anstalt v. Oxysure Sys., Inc.*, 216 F. Supp. 3d 403, 408 (S.D.N.Y. 2016) (quoting *Dodds v. Cigna Sec., Inc.*, 841 F.Supp. 89, 92 (W.D.N.Y. 1992)).

[10] Compl. ¶ 11.

[11] Dkt 22 at 23–24.

4

In *Xeriant Inc. v. Auctus Fund, LLC*,[12] this Court held that the plaintiff's claim was not time-barred because the complaint "would permit proof that plaintiff neither was aware nor chargeable, more than one year before the complaint was filed, with knowledge of defendant's activities that allegedly brought defendant within the statutory definition of 'dealer.'"[13] Plaintiff argues that the Court should adopt the same approach here. But in *Xeriant*, the relevant facts were made known to the plaintiff after the SEC initiated a lawsuit against the defendant.[14] Plaintiff filed suit in *Xeriant* four months after the filing of the SEC complaint[15] — well within one year of the time it was aware or chargeable with knowledge of the defendant's activities that brought it within the statutory definition of "dealer."

Here, the activities that allegedly brought defendant within the statutory definition of "dealer" are (1) effecting securities transactions, (2) transacting securities in substantial volume, (3) reaping substantial profits, and (4) facilitating the transactions by underwriting activity and the use of employees to make sales.[16] These activities appear to have been matters of public record at the time the warrant was issued.[17] The complaint does not allege, as in *Xeriant*, that any intervening

---

[12] No. 23-CV-9200 (LAK), 2024 WL 1151719 (S.D.N.Y. Feb. 9, 2024).

[13] *Id.* at *1.

[14] No. 23-CV-9200 (LAK), Dkt 1 ¶¶ 48–62.

[15] *Id.* ¶ 13.

[16] Dkt 22 at 8–9 (citing Compl. ¶¶ 40, 42–43, 46, 52, 54).

[17] *See, e.g.*, Compl. ¶ 42 (citing data from the publicly accessible LinkedIn page of defendant's parent entity); Dkt 22 at 10–11 (data regarding defendant's securities transactions sourced from SEC filings).

5

event put plaintiff on notice of defendant's activities. Moreover, the complaint alleges no facts supporting an inference that plaintiff could not have discovered the relevant activities through reasonable diligence at the time it issued the warrant.

Accordingly, plaintiff's Exchange Act claim is time-barred.

B.   *Merits of Exchange Act Claim*

Even if plaintiff's Exchange Act claim were timely, it would fail on the merits. Section 29(b) provides that "[e]very contract made in violation of any provision of this chapter or of any rule or regulation thereunder, . . . [or] the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void . . . ."[18] In *Xeriant*, this Court explained:

> Assuming *arguendo* that Section 29(b) gives rise to a private right of action to void an agreement, the plaintiff would be required to allege facts demonstrating that the agreement the plaintiff seeks to void obligated the defendant to act as a dealer. The complaint alleged no such facts. Plaintiff's contention that the agreement at issue may be voided on the theory that it permitted defendant to continue a practice that plaintiff regards as inconsistent with the objective of the Exchange Act registration provision and therefore is reachable under Section 29(b) is unsupported by authority and unpersuasive.[19]

Courts in this District likewise have "held that in § 29(b) actions, a defendant's failure to register as a dealer does not make the transaction 'prohibited,' where the underlying contract does not require

---

[18] 15 U.S.C. § 78cc(b).

[19] 2024 WL 1151719 at *1 (citations omitted).

6

the defendant to act as a dealer. Indeed, courts have routinely dismissed such actions."[20]

Plaintiff argues that courts in this district uniformly have been wrong. It contends that the warrant itself was a security and therefore was "made in violation of" Section 15(a) of the Exchange Act, which requires any broker or dealer effecting a securities transaction to be registered.[21] But this argument ignores the distinction between the lawfulness of a transaction as opposed to the lawfulness of a contract itself. "'[U]nder § 29(b) of the Exchange Act, only unlawful *contracts* may be rescinded, not unlawful *transactions* . . . .' This applies both to claims regarding the making of a contract as well as contract performance."[22] Indeed, courts in this district consistently have rejected the argument that a contract is made in violation of Section 15(a) based solely on a party's failure to register as a broken-dealer prior to the making of the contract.[23]

Accordingly, plaintiff's Exchange Act claim fails on the merits.

---

[20] *DarkPulse*, 2023 WL 199196, at *11 (citing cases); *see also NexPoint Diversified Real Estate Tr. v. Acis Cap. Mgmt., LP*, 80 F.4th 413, 421 (2d Cir. 2023) ("Most district courts in this Circuit have . . . interpreted § 29(b) of the Securities Exchange Act of 1934 . . . to authorize rescission only when performance of the contract itself is unlawful, not merely when the conduct of a party to the contract is unlawful." (emphasis in original)).

[21] 15 U.S.C. 78o(a) ("It shall be unlawful for any broker or dealer . . . to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) unless such broker or dealer is registered . . . .").

[22] *Cyber Apps World, Inc. v. EMA Fin., LLC*, 645 F. Supp. 3d 281, 286 (S.D.N.Y. 2022) (first alteration and emphasis in original) (quoting *Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co., Inc.*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992)).

[23] *EMA Fin., LLC v. AppTech Corp.*, No. 21-CV-06049 (LJL), 2022 WL 4237144, at *7 (S.D.N.Y. Sept. 13, 2022); *Parallax Health Scis., Inc. v. EMA Fin., LLC*, No. 20-cv-2375 (LGS) (RWL), 2022 WL 1446521, at *14 (S.D.N.Y. Feb. 24, 2022), *report and recommendation adopted as modified*, No. 20-cv-2375 (LGS), 2022 WL 2531344 (S.D.N.Y. Apr. 7, 2022); *EMA Fin., LLC v. Vystar Corp.*, No. 119CV01545ALCGWG, 2021 WL 1177801, at *3 (S.D.N.Y. Mar. 29, 2021).

*2.     Declaratory Judgment Claim*

In the alternative to rescission under Section 29(b), the complaint seeks a declaratory judgment "declaring that the warrant governs the adjustment of the Exercise Price of the Warrant."[24] The complaint alleges that the parties disagree about whether the adjustment of the exercise price is governed by the warrant or the SPA.[25] The complaint further alleges that, "[i]n the absence of declaratory relief, [p]laintiff rightfully anticipates a legal action regarding these disputed interpretations . . . ."[26] Defendant argues that the declaratory judgment claim is not ripe because defendant has not exercised the warrant, indicated an intention to exercise the warrant, or taken a position regarding what document governs adjustment of the exercise price.

*A.     Ripeness*

"The standard for ripeness in a declaratory judgment action is that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[27]  "That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action. Rather, courts should focus

---

[24] Compl. ¶ 83.

[25] *Id.* ¶ 81.

[26] *Id.* ¶ 82.

[27] *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 86 (2d Cir. 2023) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005)).

on the practical likelihood that the contingencies will occur . . . ."[28]

Here, the complaint's meager allegations are insufficient to demonstrate that an actual controversy exists. The assertion that "[p]laintiff rightfully anticipates a legal action regarding these disputed interpretations"[29] is conclusory. The complaint does not allege facts in support of this statement. Nor does the complaint demonstrate a practical likelihood that the contingencies at issue — defendant exercising the warrant and asserting that the SPA governs the adjustment of the exercise price — will occur. Defendant therefore has not alleged that an actual controversy exists.

### B.     Discretion to Exercise Jurisdiction

Even where an actual controversy exists, the Court possesses "broad discretion" not to entertain an action for declaratory relief.[30] The factors pertinent to this exercise of discretion are "(1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and

---

[28] *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (citations and internal quotation marks omitted).

[29] Compl. ¶ 82.

[30] *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) (cleaned up).

judicial economy favor declining to exercise jurisdiction."[31]

These factors weigh against entertaining plaintiff's declaratory judgment claim. The uncertainties regarding whether defendant will exercise the warrant or interpret the warrant in a particular manner weigh against (1) the usefulness of a declaratory judgment and (2) the likelihood that such a judgment would offer relief from uncertainty. The unripeness of this action raises the concern that the proposed remedy is being used in a race to *res judicata*. The availability of adequate alternative coercive remedies render a declaratory judgment unnecessary.[32] And judicial efficiency would not be served because there are no additional live claims at issue in this suit.

Accordingly, even if plaintiff's declaratory judgment claim were ripe for adjudication, the Court would decline to exercise jurisdiction.

### *Conclusion*

For the foregoing reasons, defendant's motion to dismiss (Dkt 17) is granted.

SO ORDERED.

Dated:   March 13, 2025

_____
Lewis A. Kaplan
United States District Judge

---

[31] *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023).

[32] *Jackson v. Scotts Co.*, No. 08-cv-1064 (LAK), 2008 WL 1700224, at *2 (S.D.N.Y. Mar. 27, 2008).